**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| YESENIA NIETO, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>PERDUE FARMS, INCORPORATED, a Maryland corporation,<br><br>Defendant. | FILED: DECEMBER 29, 2008<br>No.: 08CV7399<br>JUDGE KENDALL<br>MAGISTRATE JUDGE NOLAN<br>BR |

**CLASS ACTION COMPLAINT**

Plaintiff Yesenia Nieto, individually and on behalf of all others similarly situated, alleges for his Class Action Complaint against defendant Perdue Farms, Incorporated ("Perdue" or "Defendant"), upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigation made by his attorneys, as follows:

**INTRODUCTION**

1. This is a proposed class action brought by Plaintiff on behalf of himself and other consumers of Perdue brand whole chickens and oven stuff roasters ("Perdue whole chicken" or "Perdue chicken"), as defined more fully herein. Perdue processes millions of chickens per year. Perdue sells whole chickens, as well as cut-up chickens and prepared chicken products. Perdue whole chickens are sold with "giblets," the other products are not.[1] Perdue therefore has an

---

[1] "Giblets" typically include the heart, gizzard, liver, neck and other visceral organs. Much poultry (especially that sold in supermarkets) is quartered and consequently giblets are not included. The demand for giblets is low in the United States (indeed, in most Western countries), so they are often sold to pet food manufacturers.

-2-

enormous quantity of extra giblet parts to dispose of, because whole chickens are only a part of its business.

2.  Unknown to Plaintiff and Class, however, Perdue has a secret practice of disposing of additional giblet parts by inserting them (*e.g.*, *more than one* heart, liver, gizzard, neck per bird) into Perdue whole chicken sold at retail.[2] By improperly inserting these giblet parts into Perdue chicken, Perdue disposes of its extra giblets by essentially having Plaintiff and Class "pay" the disposal costs Perdue itself would incur if it wanted to properly dispose of them. Further, by this improper method, Perdue incorporates the additional giblet parts in the price per-pound of Perdue whole chickens sold to retail customers.

3.  Thus, while Plaintiff was charged $1.19 per pound for whole check, the weight of the chicken – and thus total price charged - included the extra giblet parts. This practice allows Perdue to essentially charge Plaintiff and Class for its costs to dispose of extra giblet parts, totaling millions of dollars in improper charges assessed to consumers. Consequently, Perdue makes retail consumers of its whole chickens pay for the privilege of disposing of Perdue's processing waste.

4.  Perdue's acts and omissions constitute statutory fraud, and unjust enrichment.

---

[2] Giblets are packed in small bags and inserted into the whole bird. Perdue has a practice of inserting multiple giblets in the cavity of the bird, resulting in, for example, two of each of the four giblet components.

## PARTIES

5. *Yesenia Nieto.* Plaintiff Yesenia Nieto is a natural person and citizen of Illinois, who purchased Perdue whole chicken that included additional giblet parts.

6. *Perdue Farms, Incorporated.* Defendant Perdue Farms, Incorporated is a corporation organized under the laws of Maryland with its principal place of business in Salisbury, Maryland.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1332(d)(2)(A) in that the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the putative plaintiff class are citizens of a state different from Defendant.

8. Venue is proper pursuant to 28 U.S.C. § 1391. Defendant regularly transacts and solicits business in this District.

## OVERVIEW

9. This case concerns Perdue's practice of inserting into whole chickens sold at retail additional giblets (more than one heart, liver, gizzard, neck per bird) and including the additional giblets weight in the per-pound price of the chicken. Perdue used this method to dispose of some or all of the vast quantity of extra giblets in its inventory, which were of *de minimis* value, or even a disposal cost, to Perdue.

10. Perdue knew prior to sale to Plaintiff and Class that consumers pay more for Perdue whole chicken because of this added giblet weight. Perdue failed to disclose to consumers that its whole chicken included extra giblets, and that the price per-pound included extra giblets. To be sure, consumers do not know that additional giblets are inserted in whole

chicken or that they are paying for this low-value additional product at the full price for whole chicken.

8. Retail purchasers of whole chickens reasonably expect one set of giblets per bird. The Perdue whole chickens Plaintiff and Class purchased included additional giblets (*more than one* heart, liver, gizzard and/or neck per bird), which were wrongfully inserted into Perdue whole chicken sold at retail.

9. Further, consumers reasonably expect that if Perdue knew that its chickens had additional giblets that a company such as Perdue would make a disclosure to consumers; and/or that a company such as Perdue would not include extra giblets or would remove the additional weight of the extra giblets from the per pound price.

10. Plaintiff and Class have been damaged in an amount to be proven at trial, which may include, for example, the amount of monies Perdue collected for the weight of additional giblets it (wrongfully) caused to be sold in whole chickens at retail cost.

## PERDUE'S CONDUCT

11. Prior to Plaintiff's purchase, Perdue was aware that it had a practice of causing extra giblets (more than one heart, liver, gizzard, neck per bird) to be inserted into its whole chickens sold at retail.

12. Perdue processes more than 48 million pounds of chicken products each week. Each chicken that Perdue processes has, of course, one set of giblets. The majority of Perdue products, such as cut up chicken parts or prepared chicken, are not sold with giblets. Perdue therefore has a permanent flow of large volumes of extra giblets to dispose of.

13. Perdue is able to sell a small portion of its extra giblets at retail. Beyond that, there is a limited wholesale market for this product. When there is a purchaser, the extra giblets

are sold at pennies per pound. However that market is not consistent, and Perdue often has to pay a fee to dispose of the extra giblets. Perdue's extra giblets therefore often have negative value to Perdue. They are a substantial disposal cost rather than a product possessing even a low value.

14. Plaintiff and Class, as retail purchasers of whole chicken buyers, at one to two dollars per pound, have been turned into part of Perdue's waste processing operation, and have been charged, in the aggregate, a large sum for that unwanted privilege.

## NAMED PLAINTIFF'S ALLEGATIONS

11. In 2008, Plaintiff purchased, at approximately $1.19 per pound, a Perdue whole chicken from a Jewel grocery store. After opening up the package, Plaintiff noticed that the Perdue chicken contained an extra bag of giblets stuffed into the body cavity.

## CLASS ACTION ALLEGATIONS

12. Plaintiff brings all claims herein as class claims pursuant to FED. R. CIV. P. 23. The requirements of FED. R. CIV. P. 23(a), (b)(2) and (b)(3) are met with respect to the class defined below.

**A.  Class Definition(s)**

13. The (b)(2) and (b)(3) Class consists of:

> All persons in Illinois who purchased a Perdue whole chicken at retail, from October 1, 2003 to present (the "Class Period").

Excluded from the Class is Defendant, any entities in which it has a controlling interest, any parents, subsidiaries, affiliates, officers, directors, employees and members of such persons immediate families, and the presiding judge(s) in this case and his, her or their immediate family.

**B.     Numerosity**

14.     At this time, Plaintiff does not know the exact size of the Class. Nonetheless, due to the thousands of retail purchasers, Plaintiff reasonably believes that the Class members are so numerous that joinder of all members is impracticable. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery.

**C.     Commonality**

15.     There are questions of law or fact common to the class, including at least the following:

- (a)   Whether Perdue has a practice of including extra giblets in its whole chickens sold at retail;

- (b)   Whether Defendant avoids disposal costs by including extra giblets in its whole chickens sold at retail;

- (c)   Whether Defendant boosts the price per pound of its whole chickens by including extra giblets in its whole chickens sold at retail;

- (d)   Whether Defendant had actual knowledge of its practice but failed to disclose it to Plaintiff or Class;

- (e)   Whether Defendant has acted or refused to act on grounds generally applicable to the Class;

- (f)   Whether Defendant was unjustly enriched by inserting extra giblets in whole chickens sold to retail consumers;

- (g)   Whether Defendant's conduct constitutes consumer fraud; and

- (h)   Whether Plaintiff and other members of the Class have been damaged, and if so, what is the proper measure of such damages?

**D.     Typicality**

16. Plaintiff has the same interests in this matter as all other members of the Class, and his claims are typical of all members of the class.

### E. Adequacy

17. Plaintiff is committed to pursuing this action and has retained competent counsel experienced in the prosecution and successful resolution of consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class members and does not have interests adverse to the Class.

### F. The Prerequisites of Rule 23(b)(2) are Satisfied

18. The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant has acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

19. The prosecution of separate actions by members of the class would create a risk of establishing incompatible standards of conduct for Defendant. For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal. Individual actions may, as a practical matter, be dispositive of the interest of Class members, who would not be parties to those actions.

20. Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seek, *inter alia*, equitable remedies with respect to the class as a whole.

21. Defendant's systemic policy and practices make declaratory relief with respect to the class as a whole appropriate.

### G. The Prerequisites of Rule 23(b)(3) are Satisfied

22. This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class defined above.

## CAUSES OF ACTION

### COUNT I
### (Unjust Enrichment)

23. Plaintiff repeats and realleges the allegations of the prior paragraphs, as if fully stated herein.

24. Perdue whole chickens sold at retail contain extra giblets which increase the weight of the chicken, which in turn affects the price paid.

25. Plaintiff and the Class have conferred benefits on Defendant by purchasing Perdue chicken.

26. Defendant has knowingly and willingly accepted these benefits from Plaintiff and Class.

27. Under the circumstances, it is inequitable for Defendant to retain these benefits at the expense of Plaintiff and Class.

28. Defendant has been unjustly enriched at the expense of and detriment of Plaintiff and Class by wrongfully collecting money to which Defendant, in equity, is not entitled.

29. Plaintiff and Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

30. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendant of the benefits conferred by Plaintiff and Class.

31. Plaintiff and Class have no adequate remedy at law.

32. Plaintiff seeks to obtain a pecuniary benefit for the Class in the form of all reimbursement, restitution and disgorgement from Defendants. Plaintiff's counsel are entitled to recover their reasonable attorneys' fees and expenses as a result of the conference of a pecuniary benefit on behalf of the Class, and will seek an award of such fees and expenses at the appropriate time.

**WHEREFORE,** Plaintiff, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

B. Designating Plaintiff as representative of the Class and counsel as Class counsel;

C. Entering judgment in favor or Plaintiff and Class and against Defendant;

D. Awarding Plaintiff and Class their individual damages, or alternatively, *cy pres* remedies, and attorneys' fees and allowing costs, including interest thereon;

E. Imposing a constructive trust on amounts wrongfully collected from Plaintiff and Class pending resolution of the claims herein;

F.      Granting such further relief as the Court deems just.

## COUNT II
### (Violation of Illinois Consumer Protection Act)

33.      Plaintiff repeats and realleges the allegations of the prior paragraphs as if fully stated herein.

34.      At all times relevant hereto, there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (the "Act").

35.      Section 2 of the Act provides in relevant part as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby, In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 ILCS 505/2 (footnotes omitted).

36.      Plaintiff and Class are consumers within the meaning of the Consumer Fraud Act given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

37.      Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, renders unlawful the "use or employment of any deception [including the] concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission

of such material fact ... in the conduct of any trade or commerce…" Illinois case law holds that reliance on the deception is not an element of a consumer fraud claim.

38.     Once the prospect of extra weight being added to Perdue chickens became significant, consumers (such as Plaintiff) were entitled to disclosure of that fact because a significant risk of added weight would be a material fact in a consumer's decision-making process, and/or without Perdue's disclosure, consumers would not know that there is any risk of added weight.

39.     Moreover, because giblets inserted in the whole chickens sold at retail are not detailed on the packaging, consumers had no way to know that more than the naturally occurring proportion of giblets would be included in the weight of the purchase. All of these facts were material to consumers' (such as Plaintiff's) purchase decisions.

40.     Specifically, at all times relevant, Perdue continuously and consistently failed to disclose to consumers (such as Plaintiff) that it was disposing of low-to-negative value material by adding extra giblets to its whole chickens sold at retail. Perdue failed to disclosure this practice, on the packaging on its whole chickens, or otherwise.

41.     Perdue intended that Plaintiff and the Class would rely on the deception by purchasing its chicken, unaware of the material facts described above, thereby paying to assist Plaintiff dispose of low-to-negative value extra giblets. This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

42.     Plaintiff and Class have been damaged by Perdue's because they were charged for extra giblets at the per-pound rate for whole chickens sold at retail.

43. Defendant has committed deceptive acts or practices within the meaning of the Act by engaging in the acts and practices alleged herein, including, but not limited to, its failure to disclose the wrongful overcharges for whole chickens sold to consumers at retail.

44. Defendant's conduct alleged herein is furthermore unfair insofar as it offends public policy; is so oppressive that the consumer has little alternative but to submit; and causes consumers substantial injury.

45. As a direct and proximate result of the unfair acts or practices of Defendant alleged herein, Plaintiff and the Class were damaged.

**WHEREFORE,** Plaintiff, individually and on behalf of the Class of persons described herein, pray for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Class defined herein;

B. Designating Plaintiff as representative of the Class and counsel as Class counsel;

C. Entering judgment in favor or Plaintiff and Class and against Defendant;

D. Awarding Plaintiff and Class their individual damages, or alternatively, *cy pres* remedies, and attorneys' fees and allowing costs, including interest thereon;

E. Granting such further relief as the Court deems just.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**DATED**: December 29, 2008    Respectfully submitted,

**YESENIA NIETO,**
**Class Plaintiff,**

By:  __/s/ George K. Lang___ ____
         One of Her Attorneys

George K. Lang #6211537
Michael J. Lotus
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois  60602
(312) 220-0000
GeorgeL@freedweiss.com
Mike@freedweiss.com

**Counsel for Plaintiff and**
**Proposed Class**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 29, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record.

    /s/George K. Lang
George K. Lang
george@freedweiss.com
**FREED & WEISS LLC**
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

-14-