IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| YESENIA NIETO, individually and on behalf of all others similarly situated. | )<br>)<br>) |
| Plaintiff, | ) Case No. 08-07399<br>) |
| v. | ) Honorable Virginia M. Kendall<br>) |
| PERDUE FARMS, INCORPORATED, a Maryland Corporation | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Yesenia Nieto ("Nieto") filed suit against Defendant Perdue Farms, Incorporated ("Perdue") individually and on behalf of all others similarly situated, alleging unjust enrichment (Count I), a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count II) or, alternatively, a violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, §§ 13-301 *et seq.* (Alternative Count II), and seeking declaratory relief pursuant to 28 U.S.C. § 2201 (Count III). Perdue moves to dismiss Nieto's Second Amended Complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, Perdue's Motion to Dismiss is granted.

## BACKGROUND

The following facts are taken from Plaintiff's Amended Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Perdue, a company that processes chickens for consumers, distributes whole chickens and

1

cut-up chicken portions for sale in grocery stores. Whole chickens contain giblets, a culinary term referring to the fowl's offal including the heart, gizzard, liver, and neck. Cut-up chicken portions do not come with giblets. Because Perdue sells more cut-up chicken portions than whole chickens, it has "an enormous quantity of extra giblet parts to dispose of . . . ." (Compl. ¶ 1.) Perdue sells its extra giblets in packets for consumer use and also sells them to pet food manufacturers. Despite its efforts, Perdue cannot sell all of the extra giblets; therefore, it must pay to properly dispose of them.

Nieto alleges that starting no later than October 13, 2003, and continuing to the present day, "Perdue has [had] a secret practice of disposing of additional giblet parts by inserting them (e.g., more than one heart, liver, gizzard or neck per bird) into Perdue whole chicken sold at retail." (Compl. ¶ 2) (emphasis omitted.) Because consumers pay for Perdue whole chickens by the pound, Perdue's practice of stuffing extra giblets into whole chickens increases the total weight of a whole chicken, effectively forcing consumers to subsidize Perdue's costs of disposing of the extra giblets. Nieto claims that the extra giblet weight can add up to 1/4 pound or more to each chicken.

Nieto alleges that Perdue concealed the inclusion of these extra giblets in its communications with its customers "through advertising generally and at the point of sale." (Compl. ¶ 17). Though Nieto cannot point specifically to any individual by name, she alleges that "those at Perdue responsible for (1) placing giblets into giblet packs, (2) placing giblet packs into whole birds, (3) giblet waste management, and (4) overseeing and auditing these processes and policies are important to this fraud." *Id*.

## STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy*,

2

51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. A claim has facial plausibility when the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

Perdue also moves to dismiss on the grounds that Nieto has not met he heightened pleading standard set forth in Rule 9. Rule 9 provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9. This heightened pleading requirement was intended to protect against the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). To satisfy the requirements of Rule 9, a plaintiff must set forth "the who, what, when, where, and how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

## DISCUSSION

### I.   Subject Matter Jurisdiction

Nieto claims federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act ("CAFA"). CAFA grants federal jurisdiction over a "mass action," that is, a Federal Rule of Civil Procedure 23 class action meeting three criteria: (1) at least 100 members

3

in the class, 28 U.S.C. § 1332(d)(11)(B); (2) with at least $5,000,000 at issue, 28 U.S.C. § 1332(d)(2); (3) where any defendant and any class member are citizens of diverse states ("minimal diversity"), 28 U.S.C. § 1332(d)(2)(A). *See Hart v. FedEx Ground Package Sys.*, 457 F.3d 675 (7th Cir. 2006). That Nieto's class has not yet been certified does not preclude jurisdiction under CAFA. *See Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 806 (7th Cir. 2010) ("federal jurisdiction under the Class Action Fairness Act does not depend on certification . . .").

Although Nieto has not specifically addressed these three requirements, all have been satisfied. First, Nieto has defined the class as "[a]ll persons who purchased a Perdue whole chicken at retail from October 13, 2003 to present," which, if certified, would surely exceed 100 members and satisfy CAFA's first requirement. (Compl. ¶ 17). Second, given the large number of plaintiffs, and that the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") permits recovery of punitive damages and attorney's fees, it is plausible that the amount in controversy will exceed $5,000,000. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) (CAFA's amount in controversy requirement satisfied even though the plaintiff did not specify the amount in controversy, because ICFA permitted recovery of punitive damages). Finally, Nieto, a citizen of Illinois, and Perdue, a citizen of Maryland, are citizens of diverse states. Nieto has therefore established subject matter jurisdiction.

**II.     Lack of Particularity in Pleading**

Perdue moves to dismiss Nieto's consumer fraud claim (Count II and Alternative Count II) asserting that Nieto's Complaint fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). The Complaint alleges that Perdue violated the ICFA, or alternatively, the Maryland Consumer Protection Act, by disposing of additional giblets through inserting them into

4

Perdue whole chickens sold, by the pound, at retail.

To state a claim under the ICFA, Nieto must allege: 1) a deceptive act or practice by Perdue; 2) Perdue's intent that Nieto rely on the deception; 3) that the deception occurred in the course of conduct of trade or commerce; 4) actual damage to Nieto; and 5) that the damage was proximately caused by Perdue. *See Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005). A complaint alleging a violation of the ICFA must be pleaded with the same particularity as common law fraud and must meet the heightened pleading standard of Rule 9(b). *See Davis v. G .N. Mortgage Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (consumer fraud claims must be pleaded with the same level of specificity required by Rule 9(b)); *see also Pirelli v. Walgreen Co.*, 09-cv-2046, 2009 WL 2777995, *4 (N.D. Ill. Aug. 31, 2009) (Kendall, J.) (same). "While [Rule 9(b)] does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

Nieto claims that she has met the heightened standard by specifying the "who, what, when, where, and how" of this alleged fraud. To begin, Nieto does not specify any individual who misrepresented or concealed any relevant fact, but generally alleges that "those at Perdue responsible for (1) placing giblets into giblet packs, (2) placing giblet packs into whole birds, (3) giblet waste management, and (4) overseeing and auditing these processes and policies are important to this fraud." To satisfy Rule 9(b)'s heightened standard, however, Nieto must allege the "identity of the person *who made the misrepresentation . . .*" *Uni\*Quality*, 974 F.2d at 923 (emphasis added); *see*

*United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823 (N.D. Ill. Jan. 3, 2007) ("Rule 9(b) requires specifics such as the name of the individual who made the statement . . . "). Here, Nieto failed to identify the *names* of the people alleged to be "important" to this fraud. More importantly, Nieto does not allege in what capacity these people were involved in the alleged fraud, nor does she allege that these people made any misrepresentations—rather only that they are "important" to the fraud. This alone precludes the Complaint from satisfying Rule 9(b).

The vague time period stated for the allegedly fraudulent activity is also insufficient to meet Rule 9(b)'s requirements. Nieto alleges that Perdue began its fraudulent practice "no later than October 13, 2003, continuing through the time of Plaintiff's purchase of a whole chicken on October 13, 2008, and on an ongoing basis continuing to this day," and that it took place "in its communications with Plaintiff and the Class members . . . through advertising generally and at the point of sale." There appears to be no factual basis for the initial date of October 13, 2003, other than it is exactly five years prior to the date on which Nieto purchased her chicken. As such, the only date provided and supported by facts is the date of Nieto's purchase. While exact dates of each alleged misrepresentation are not required, providing such a vague time frame is insufficient to satisfy Rule 9(b)'s heightened pleading requirements.

Nieto's allegations with regard to the "what" and "how" of the fraudulent activity are similarly inadequate. Nieto alleges that Perdue "knew and fraudulently concealed and/or intentionally failed to disclose . . . that Perdue was passing off its excess giblet waste." (Compl. ¶ 17). Nieto alleges no facts supporting this claim, rather only stating that her experience—finding extra giblets in one chicken—and "her attorney's investigation . . . reveal the passing off of extra giblets on consumers is not an isolated event but a policy and/or procedure which is an accepted

means of giblet disposal by Perdue." *Id*. Tellingly, Nieto does not disclose any factual findings from her attorney's investigation that would support her allegations. Instead, the only fact provided is that Nieto found extra giblets in one chicken. Nieto also alleges that Perdue did not notify customers of its policy to insert these extra giblets into each chicken, but Nieto does not provide any facts suggesting the existence of such a policy. These conclusory assertions are not enough to put Perdue on notice of the specific allegations to which it must respond.

Because Nieto has failed to plead with specificity the who, what, where, when, and how of the alleged fraud, it has failed to state claim against Perdue under the ICFA and Count II of the SAC is dismissed. Since Maryland's Consumer Protection Act similarly must be pleaded with the same level of specificity required by Rule 9(b), Alternative Count II of the SAC is also dismissed. *See Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 251-52 (D.Md. 2000) (applying Rule 9(b)'s heightened pleading requirements to allegation of fraud under Maryland Consumer Protection Act); *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D.Md. 2000) ("[B]ecause fraud is at the heart of Defendants' alleged violations of the [Maryland Consumer Protection Act], Federal Rule of Civil Procedure 9(b)'s requirement of particularity in the pleading of fraud must apply.").

## III.  Unjust Enrichment

Nieto also brings a claim for unjust enrichment, seeking to recover from Purdue the amounts wrongfully collected as a result of its alleged practice of adding extra giblets to each chicken. Unjust enrichment is not a self-sufficient claim, however, but must rely upon an underlying claim of fraud or breach of fiduciary duty. *See Harris Trust & Sav. Bank v. Salomon Bros*, 832 F.Supp 1169, 1176 (N.D.Ill.1993) (citing *Charles Hester Enters., Inc. v. Illinois Founders Ins. Co.*, 484 N.E.2d 349, 354 (5th Dist.1985), *aff'd* 499 N.E.2d 1319 (Ill.1986)). Here, Nieto claims that she has

7

alleged a breach of fiduciary duty by stating that "consumers reasonably expect that if Perdue knew that its chickens had additional giblets, and the extra weight, that a company such a Perdue would make a disclosure to consumers; and/or that a company such as Perdue would not include extra giblets from the per pound price." (Compl. ¶ 17). Nieto does not cite any legal authority for the proposition that this expectation equates to a fiduciary duty on Perdue's part, however.

Regardless, since Nieto's unjust enrichment claim sounds in fraud, and as described above fails to meet the particularity requirements of Rule 9(b), Count I of the SAC is dismissed. *See In re Sears, Roebuck & Co. Mktg. & Sales Practices Litig.*, No. MDL-1703, 2009 WL 937256, at *11 (N.D. Ill. Apr. 6, 2009) (Grady, J.) (dismissing unjust enrichment claims of plaintiffs who failed to adequately plead fraud under Rule 9(b)); *Pirelli*, 2009 WL 2777995, at *7 ("[Plaintiff]'s Complaint fails to state a claim of fraud against [defendant] and therefore its claim for unjust enrichment must be dismissed.").

## IV. Declaratory Relief

In Count III, Nieto seeks declaratory relief pursuant to 28 U.S.C. § 2201. Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201. The Declaratory Judgment Act does not confer substantive rights; it is merely a procedural remedy. *See Powers v. United States*, 218 F.2d 828, 829 (7th Cir. 1954). Therefore, suits under the Declaratory Judgment Act "must present a recognizable previously existing justiciable controversy . . . ." *Id*. Nieto bears the burden of establishing that a controversy exists. *See Cardinal Chem. Co. v. Morton Int'l Inc.*, 508 U.S. 83, 95 (1993). Since Nieto has failed to adequately plead a violation of the

8

Illinois Consumer Protection Act, a violation of the Maryland Consumer Protection Act, or a claim of unjust enrichment, Nieto has not pleaded sufficient facts to show the existence of a substantial controversy that would warrant a declaratory judgment. Count III of the SAC is dismissed.

## V. Dismissal With Prejudice

Perdue argues that after repeated opportunities to amend, Nieto is still unable to sufficiently allege any claims against it, and that her Second Amended Complaint should therefore be dismissed with prejudice. "[W]here the plaintiff has repeatedly failed to remedy the same deficiency, the district court [does] not abuse its discretion by dismissing the claim with prejudice." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Nieto has failed to allege any additional facts to support her claims, and to permit further amendments would be futile. *See Airborne Beppers & Video, Inc. V. A.T.&T. Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (leave to amend may be denied where previous amendments have not cured identified deficiencies). Therefore, Count I, Count II, Alternative Count II, and Count III are dismissed with prejudice.

## CONCLUSION AND ORDER

Nieto has established federal subject matter jurisdiction under the Class Action Fairness Act. However, she has failed to allege sufficient facts to satisfy Rule 9(b)'s heightened pleading standard, and therefore has not stated a claim under either the ICFA or the Maryland Consumer Protection Act. Because Nieto has not established a claim of fraud or breach of fiduciary duty, she cannot sustain a claim for unjust enrichment. Further, she has not adequately presented a justiciable controversy, and is therefore not entitled to declaratory relief. Repeated attempts to cure these pleading deficiencies have not proved fruitful.

Perdue's Motion to Dismiss is granted. The Second Amended Complaint is dismissed, in

9

its entirety, with prejudice.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 17, 2010